**STATE FEDERAL SAVINGS & LOAN ASSOCIATION OF LUBBOCK, Plaintiff, Counter–Defendant–Appellant,**

v.

**W.M. CAMPBELL, Defendant, Counter–Plaintiff–Appellee.**

No. 87–3336.

United States Court of Appeals, Eleventh Circuit.

July 8, 1988.

David H. Flint, Schreeder, Wheeler & Flint, Atlanta, Ga., for plaintiff, counter-defendant-appellant.

Gordon H. Harris, Stephen A. Hilger, Gray, Harris & Robinson, Orlando, Fla., for defendant, counter-plaintiff-appellee.

Before RONEY, Chief Judge,
CLARK, Circuit Judge, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

## FACTS

On May 1, 1986, State Federal Savings & Loan Association of Lubbock ("State Federal")[1] instituted this diversity action against Waymon Max Campbell ("Campbell"), a resident of Orange County, Florida, seeking to recover on a guaranty agreement which State Federal alleged was an unconditional guaranty still valid against Campbell. The agreement, executed by Campbell and his son, Ronald D. Campbell, guaranteed a deed of trust promissory note (the "note") for a $7,070,000 loan made to Ranchland Development Group by State Federal's predecessor in interest, State Savings & Loan Association ("State Savings"). Campbell answered, specifically pleading that the guaranty was of no force or effect and that the underlying note became non-recourse when State Savings consented to the sale of Ranchland Apartments Project from Ranchland Development Group to Ranchland Investors, Ltd. Campbell further alleged that State Savings lost any right to enforce the guaranty agreement. Campbell also filed a counterclaim against State Federal for State Savings' alleged breach of its duty to cancel the guaranty when the underlying note became non-recourse and for a breach of fiduciary duty for the same reason.

In November 1986, State Federal assigned the guaranty and related loan documents to the Federal Savings & Loan Insurance Corp. ("FSLIC").[2] On March 3, 1987, State Federal notified the district court and Campbell of the assignment and moved to voluntarily dismiss its action against Campbell without prejudice. The district court denied State Federal's motion on March 16, 1987. A pre-trial stipulation was filed on March 30, 1987, and trial was set for April 10, 1987.

Three days before the trial, the district court reconsidered State Federal's motion and dismissed State Federal's complaint, but permitted Campbell's pending counterclaim to go to trial. Campbell then moved to amend his counterclaim to include his claim for rescission which had been raised in his answer and in certain paragraphs of the pre-trial stipulation. On April 9, 1987, the district court granted Campbell's motion to amend, noting that the rescission issues were contemplated by the parties.

At trial, Campbell, as counter-plaintiff, called his son Ronald D. Campbell to testify, and Campbell testified on his own behalf. State Federal rested its defense without calling a witness or presenting any evidence. Both parties then moved for directed verdict. The district court granted Campbell's motion for directed verdict for rescission of the guaranty, but granted State Federal a directed verdict on Campbell's counterclaim for breach of good faith and breach of fiduciary duty. State Federal appeals the directed verdict for rescission of the guaranty.

On September 15, 1982, State Federal issued a loan commitment to Ronald D. Campbell as President of Campbell & Company Development Real Estate, Inc. Campbell & Company was the general partner for Ranchland Development Group which had been formed for the purpose of constructing apartments. The loan commitment issued by State Savings to Ranchland Development Group concerned financing of the Ranchland Apartment Project which was constructed in Midland, Texas, between 1982 and 1984.

Paragraph 11(e) of the loan commitment letter defines the "guarantors" of the in-

---

1. State Federal Savings & Loan Association of Lubbock is a federally chartered Savings and Loan Association with its principal place of business in Lubbock, Texas.

2. FSLIC did not intervene nor was it involuntarily joined as a plaintiff in this action.

tended loan as Ronald D. Campbell and Campbell. This paragraph provides in pertinent part:

*Closing:* The loan shall be closed on such documentation as may be approved as to form and substance by Lender's counsel, which includes but shall not be limited to the following ...

e. Personal guaranties of Developer's obligations to Lender from Ronald D. Campbell, W.M. Campbell [Campbell] and such other principals of Developer as Lender may require (such individuals and principals referred to herein as "Guarantors").

Paragraph 5(b) of the loan commitment letter indicates that the note was to become non-recourse upon (1) the conversion from the "construction period" to the "amortization period," or (2) the date of the sale of the Project to a limited partnership on terms acceptable to State Savings. Upon the occurrence of either of these events, the guarantors were to be forever released from any personal liability. Thereafter, State Savings' recourse in the event of default was automatically limited to foreclosing its interest in the real property encompassed by the Ranchland Apartment Project.

The closing of the Ranchland Apartment Project loan took place on February 9, 1983, in Houston, Texas. At the closing, State Savings and its attorneys noticed that the loan closing documents,[3] prepared in Dallas by the attorneys for States Savings, contained an error of omission in that the documents only referred to Ronald D. Campbell as "guarantor" and completely omitted Campbell's name. The attorneys simply typed in a new signature line and name for Campbell underneath the line for Ronald D. Campbell and then had Campbell sign the guaranty.

Two years later, following the expiration of the construction period, State Savings consented to the sale of the Ranchland Apartment Project from Ranchland Development Group to Ranchland Investors, Ltd. Meanwhile, State Savings had assigned the

loan to State Federal, which subsequently foreclosed on the underlying deed of trust. State Federal thereafter attempted to collect the outstanding amount due under the loan from Campbell.

## DISCUSSION

State Federal contends that the district court improperly permitted Campbell to amend his counterclaim, erred in admitting extrinsic evidence, and erred in denying State Federal's motion for directed verdict on the issue of rescission.

### A. Amendment of Counterclaim

■ State Federal asserts that it was prejudiced by Campbell's inexcusable delay in amending his counterclaim, and that granting Campbell leave the day before trial to amend his counterclaim to include the rescission issue worked an injustice against State Federal. State Federal avers that the district court recognized State Federal was an inappropriate party to the suit when the court permitted voluntary dismissal of the original claim on the guaranty. State Federal contends that the district court then abused its discretion because permitting Campbell's amendment reinstated the inappropriate party to litigate the validity of the guaranty. Moreover, State Federal argues that Campbell's failure to present any evidence at trial concerning the issues raised in his original counterclaim proves that Campbell wrongfully used two meritless claims as a conduit to assert the rescission issue at the last minute.

State Federal instituted this action prior to transferring its interest in the guaranty to the FSLIC in November 1986. Fed.R. Civ.P. 25(c) provides that where an interest is transferred "the action may be continued by or against the original party, unless the court *upon motion* directs the person to whom the interest is transferred to be substituted in the action or joined with the original party...." (emphasis added). State Federal made no motion to substitute FSLIC as assignee of the guaranty. Thus,

---

**3.** The loan closing documents included the actual deed of trust note for $7,070,000, the guaranty, a deed of trust, a security agreement, and a loan agreement.

the trial court properly continued the action in the name of State Federal.

Under Fed.R.Civ.P. 15(a), a party seeking to amend its pleading subsequent to a responsive pleading may do so only by leave of the trial court. Rule 15(a) requires that leave to amend shall be freely given where justice requires. The trial court's decision may only be overruled if the court abused its discretion. *Dussouv v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir.1981).[4] The court below did not abuse its discretion by allowing Campbell to amend. Pursuant to Rule 3.06(e), Rules of the United States District Court for the Middle District of Florida, all pleadings are deemed to be merged in the pre-trial stipulation. The pre-trial stipulation and pre-trial orders control the course of the trial. The issue of rescission of the guaranty was propounded in Campbell's original pleadings and in the pre-trial stipulation. Thus, State Federal was not unfairly surprised or prejudiced by the amendment to Campbell's counterclaim.

Moreover, State Federal failed to file an opposing memorandum to the amendment, *see* Rule 3.01(a), Rules of the United States District Court for the Middle District of Florida, failed to move for a continuance, and failed to object at trial or take exception to the trial court's order allowing the amendment. State Federal cannot complain of the amendment of the counterclaim for the first time on appeal.

We thus find State Federal's argument regarding abuse of discretion to lack merit.

## B. Parol Evidence

■ Whether Texas or Florida law is applied, extrinsic evidence is admissible where a contract or a portion of a contract is ambiguous. *See Casteel v. Gunning*, 402 S.W.2d 529, 535 (Tex.Civ.App.1966); *Sears v. James Talcott, Inc.*, 174 So.2d 776, 778 (Fla. 2d DCA 1965). The guaranty was ambiguous on its face. Although Campbell's signature was on the guaranty, nowhere in the body of the guaranty was there any reference to Campbell or any explanation of why Campbell signed the guaranty. The district court had to allow extrinsic evidence to be presented in order to determine whether Campbell signed as a "guarantor" and, if so, what conditions of the guaranty applied to Campbell as a "guarantor."

The district court, therefore, did not err in allowing the admission of the loan commitment letter. Nor did the court err in allowing the Campbells to testify about the oral understanding reached by Campbell and State Savings' attorneys on the day of closing as to what capacity Campbell was signing the guaranty.

The district court found that the omission of Campbell from the loan closing documents was an unintentional oversight. At trial, Campbell presented undisputed evidence that he had been assured at the closing that he would be accorded the same rights as his son, Ronald D. Campbell. The court found that at the time of closing, it was the intent of all the parties that Campbell be given such similar rights as Ronald D. Campbell.

In the pre-trial stipulation, the parties agreed that the Ranchland Apartment Project was sold with the consent of State Savings to a limited partnership and that the "construction period" was converted to the "amortization period" under the terms of the and conditions of the loan. As a result, the note became non-recourse and the liability of the guarantors was extinguished. The district court found that State Federal presented no evidence at trial which would allow any reasonable man to come to any conclusion other than that Campbell was intended by all parties to be accorded the same rights as Ronald D. Campbell. The court thus concluded that since the note became non-recourse, and Ronald D. Campbell was not liable under the guaranty for a non-recourse note, Campbell likewise was not liable and the guaranty with respect to Campbell was thereby cancelled.

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Findings of fact may be overturned only if those findings are clearly erroneous. Fed.R.Civ.P. 52(a). *See Tulia Feedlot, Inc. v. United States,* 513 F.2d 800, 806–07 (5th Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975). Reviewing the entire record, we hold that the district court's findings are not clearly erroneous.

### C. Motion for Directed Verdict

■ At the close of the trial, State Federal moved for directed verdict on the issue of rescission of the guaranty; the court denied this motion. State Federal now seeks to have that determination overruled. State Federal contends that the parol evidence was inadmissible and that none of the admissible evidence introduced by Campbell supported his claim for rescission. Therefore, State Federal maintains the district court should have granted its motion for directed verdict.

As discussed *supra,* the extrinsic evidence was admissible to clarify the ambiguity concerning Campbell's signature on the guaranty. Just as the district court did below, we examine the entire record in the light most favorable to the non-movant, Campbell. *See Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969). We hold the district court correctly denied State Federal's motion.

### CONCLUSION

Since State Federal failed to preserve in district court the arguments now raised, and failed as well to carry any of its burdens on appeal, the final judgment of the district court is AFFIRMED.